IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELECTRONICS AND TELECOMMUNICATIONS RESEARCH INSTITUTE and UNIVERSITY-INDUSTRY COOPERATION GROUP OF KYUNG HEE UNIVERSITY,<br><br>Plaintiffs,<br>v.<br><br>SNAP INC.,<br>Defendant. | C.A. No. 26-918 (MN) |
| SNAP INC.<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>ELECTRONICS AND TELECOMMUNICATIONS RESEARCH INSTITUTE, UNIVERSITY-INDUSTRY COOPERATION GROUP OF KYUNG HEE UNIVERSITY and ACCESS ADVANCE LLC,<br><br>Counterclaim-Defendants. | |

**DEFENDANT SNAP INC.'S ANSWER AND COUNTERCLAIMS**
**TO THE FIRST AMENDED COMPLAINT**

Defendant and Counterclaim-Plaintiff Snap Inc. ("Snap"), by and through its undersigned counsel, hereby answers and asserts the following Counterclaims to the First Amended Complaint ("Complaint") (D.I. 17) and against Electronics and Telecommunications Research Institute ("ETRI"), University-Industry Cooperation Group of Kyung Hee University ("Kyung Hee University"), Industry-University Cooperation Foundation of Korea Aerospace University ("KAU"), Kwangwoon University Industry-Academic Collaboration Foundation ("Kwangwoon University") (collectively, "Plaintiffs"), and Access Advance LLC ("Access Advance")

(collectively, "Counterclaim-Defendants"), as follows. All allegations not expressly admitted are denied.

## NATURE OF THE ACTION[1]

1. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint, and therefore denies them.

2. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint, and therefore denies them.

3. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 3 of the Complaint, and therefore denies them.

4. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 4 of the Complaint, and therefore denies them.

5. Denied.

6. Denied.

## PARTIES

7. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 7 of the Complaint, and therefore denies them.

8. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint, and therefore denies them.

9. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 9 of the Complaint, and therefore denies them.

10. Snap lacks sufficient knowledge or information to form a belief as to the truth of

[1] For ease of reference, Snap has reproduced the headings in the Complaint in this answer. To the extent that the headings in the Complaint contain factual or legal allegations, Snap denies such allegations.

the allegations in Paragraph 10 of the Complaint, and therefore denies them.

11. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint, and therefore denies them.

12. Snap admits that Plaintiffs' Complaint purports to allege infringement of the Asserted Patents, but denies that Snap has committed any act of infringement of any Asserted Patent, in this District or elsewhere. Snap denies any remaining allegations of Paragraph 12 of the Complaint.

13. Snap admits that it is a corporation organized under the laws of the State of Delaware. Snap denies any remaining allegations of Paragraph 13 of the Complaint.

14. Snap admits that it has places of business at 2772 Donald Douglas Loop N, Santa Monica, CA 90405 and 3000 31st Street, Santa Monica, CA 90405. Snap denies the remaining allegations in Paragraph 14 of the Complaint.

**JURISDICTION AND VENUE**

15. Paragraph 15 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap admits that this Court has subject matter jurisdiction over patent infringement claims under 28 U.S.C. §§ 1331 and 1338, but denies that Snap has committed any acts of infringement. Snap denies any remaining allegations in Paragraph 15 of the Complaint.

16. Paragraph 16 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap denies the allegations in Paragraph 16 of the Complaint, including any allegation that Plaintiffs have complied with their reasonable and

nondiscriminatory (“RAND”)[2] commitments.

17. Paragraph 17 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap does not contest that this Court has personal jurisdiction over Snap for purposes of this action only. Snap further admits that it appointed Corporation Service Company as its registered agent. Snap denies the remaining allegations of Paragraph 17 of the Complaint.

18. Paragraph 18 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap does not contest that this Court has personal jurisdiction over Snap for purposes of this action only. Snap denies the remaining allegations of Paragraph 18 of the Complaint.

19. Denied.

20. Paragraph 20 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap admits that it conducts business in Delaware, but denies any acts of wrongdoing. Snap denies the remaining allegations in Paragraph 20 of the Complaint.

21. Denied.

22. Denied.

23. Paragraph 23 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap does not contest that venue is proper in this judicial district based on Snap’s incorporation in Delaware for purposes of this action only. Snap denies the remaining allegations of Paragraph 23 of the Complaint.

**FACTUAL BACKGROUND**

---

[2] Snap uses the term “RAND” throughout its Answer and Defenses interchangeably with the term “FRAND” for Fair, Reasonable, and Nondiscriminatory.

24. Snap lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 24 of the Complaint, and therefore denies them.

25. Snap lacks sufficient knowledge or information to form a belief as to the allegations in Paragraph 25 of the Complaint, and therefore denies them.

26. Denied.

27. To the extent the allegations in Paragraph 27 of the Complaint purport to characterize the contents of a written document, said document speaks for itself. Snap admits that a user can post a Story to share a photo or video for viewing by other users of the Snapchat app. Snap denies the remaining allegations in Paragraph 27 of the Complaint.

28. To the extent the allegations in Paragraph 28 of the Complaint purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies the remaining allegations in Paragraph 28 of the Complaint.

29. To the extent the allegations in Paragraph 29 of the Complaint purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies the remaining allegations in Paragraph 29 of the Complaint, including any characterization or suggestion of its services as infringing any patents.

30. To the extent the allegations in Paragraph 30 of the Complaint purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies the remaining allegations in Paragraph 30 of the Complaint, including any characterization or suggestion of its services as infringing any patents.

31. To the extent the allegations in Paragraph 31 of the Complaint purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies the remaining allegations in Paragraph 31 of the Complaint, including any

characterization or suggestion of its services as infringing any patents, or that Plaintiffs are entitled to any relief.

**THE ITU'S COMMON PATENT POLICY**

32. Snap admits that the International Telecommunication Union (ITU) is a specialized agency of the United Nations responsible for coordinating certain global issues related to information and communication technologies. Snap lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 32 of the Complaint, and therefore denies them.

33. Snap admits that one of the ITU's sectors is known as ITU-T, which develops certain telecommunications standards. Snap lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 33 of the Complaint, and therefore denies them.

34. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 34 of the Complaint, and therefore denies them.

35. Snap admits that the ITU has a Common Patent Policy and Guidelines that require participants to disclose patents potentially essential to implementing ITU standards and to provide licensing declarations committing to RAND terms. Snap lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 35 of the Complaint, and therefore denies them.

36. Snap admits that Paragraph 36 reproduces an excerpt of the ITU's Common Patent Policy included in Exhibit 8 to the Complaint. To the extent the allegations in Paragraph 36 of the Complaint purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 36 of the Complaint, and therefore

denies them.

37. Snap admits that Paragraph 37 quotes an excerpt of the ITU's Patent Policy Guidelines included in Exhibit 9 to the Complaint. To the extent the allegations in Paragraph 37 of the Complaint purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 37 of the Complaint, and therefore denies them.

38. Snap admits that Plaintiffs are required to grant licenses for implementations of the H.265 standard to any patent claims essential to the H.265 standards on RAND terms and conditions. Snap lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 38 of the Complaint, and therefore denies them.

**[ALLEGED] LICENSE OFFERS TO SNAP**

39. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 39 of the Complaint, and therefore denies them.

40. Snap admits that Access Advance contacted Snap regarding licensing. Snap denies the remaining allegations in Paragraph 40 of the Complaint.

41. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 41 of the Complaint, and therefore denies them.

42. Snap admits that Access Advance and Snap held a telephone call on or about November 24, 2025. Snap denies the remaining allegations in Paragraph 42 of the Complaint.

43. Snap admits that Access Advance and Snap held a call on January 14, 2026, and that Access Advance sent an email attaching several documents on January 15, 2026. To the extent the allegations in Paragraph 43 purport to characterize the contents of a written document, said document speaks for itself. Snap denies the remaining allegations in Paragraph 43 of the

Complaint.

44. Snap admits that Access Advance sent an email to Snap on January 30, 2026, to which Snap responded. Snap denies the remaining allegations in Paragraph 44 of the Complaint.

45. Snap admits that Access Advance sent emails on February 9, 2026, and February 25, 2026. Snap admits that, on March 3, 2026, Snap sent an email to Access Advance attaching a draft NDA and proposed a call. Snap denies the remaining allegations in Paragraph 45 of the Complaint.

46. Snap admits that Access Advance informed Snap of lawsuits ETRI filed in Brazil in an email to Snap on March 25, 2026, and that Snap responded on March 27, 2026. To the extent the remaining allegations in Paragraph 46 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies the remaining allegations in Paragraph 46 of the Complaint.

47. Denied.

48. Denied.

49. Snap admits that Access Advance and Snap continued negotiating following Access Advance's initial outreach to Snap. Snap denies the remaining allegations in Paragraph 49 of the Complaint.

50. Denied.

51. Paragraph 51 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 51 of the Complaint, and therefore denies them.

**PLAINTIFFS' ASSERTED PATENTS**

52. Snap admits that it is a licensee of the HEVC Advance pool. Snap lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in

Paragraph 52 of the Complaint, and therefore denies them.

**A. U.S. Patent No. 11,595,643**

53. Snap admits that the document attached as Exhibit 1 to the Complaint purports on its face to be a copy of U.S. Patent No. 11,595,643 (the "'643 Patent"). To the extent the allegations in Paragraph 53 of the Complaint purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 53 of the Complaint, and therefore denies them.

54. To the extent the allegations in Paragraph 54 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 54 of the Complaint.

55. To the extent the allegations in Paragraph 55 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 55 of the Complaint.

56. To the extent the allegations in Paragraph 56 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 56 of the Complaint, and therefore denies them.

57. To the extent the allegations in Paragraph 57 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 57 of the Complaint, and therefore denies them.

58. To the extent the allegations in Paragraph 58 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks

sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 58 of the Complaint, and therefore denies them.

59. To the extent the allegations in Paragraph 59 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 59 of the Complaint, and therefore denies them.

60. To the extent the allegations in Paragraph 60 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 60 of the Complaint, and therefore denies them.

61. To the extent the allegations in Paragraph 61 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies that the '643 Patent provides a "specific technological improvement to the functionality and capabilities of video coding technology." Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 61 of the Complaint, and therefore denies them.

62. To the extent the allegations in Paragraph 62 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies that the '643 Patent "recognizes and solves these specific technological problems that plagued the conventional technology at the time." Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 62 of the Complaint, and therefore denies them.

63. Denied.

64. To the extent the allegations in Paragraph 64 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 64 of the Complaint, and therefore denies them.

65. Paragraph 65 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 65 of the Complaint, and therefore denies them.

**B. U.S. Patent No. 9,883,182**

66. Snap admits that the document attached as Exhibit 2 to the Complaint purports on its face to be a copy of U.S. Patent No. 9,883,182 (the "'182 Patent"). To the extent the allegations in Paragraph 66 of the Complaint purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 66 of the Complaint, and therefore denies them.

67. To the extent the allegations in Paragraph 67 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 67 of the Complaint.

68. To the extent the allegations in Paragraph 68 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 68 of the Complaint, and therefore denies them.

69. To the extent the allegations in Paragraph 69 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph

69 of the Complaint, and therefore denies them.

70. To the extent the allegations in Paragraph 70 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 70 of the Complaint, and therefore denies them.

71. To the extent the allegations in Paragraph 71 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies that the '182 Patent provides a "specific technological improvement to the functionality of video coding technology." Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 71 of the Complaint, and therefore denies them.

72. Denied.

73. Denied.

74. To the extent the allegations in Paragraph 74 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 74 of the Complaint, and therefore denies them.

75. To the extent the allegations in Paragraph 75 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 75 of the Complaint, and therefore denies them.

76. Paragraph 76 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 76 of the Complaint, and therefore denies them.

**C. U.S. Patent No. 10,021,416**

77. Snap admits that the document attached as Exhibit 3 to the Complaint purports on its face to be a copy of U.S. Patent No. 10,021,416 (the "'416 Patent"). To the extent the allegations in Paragraph 77 of the Complaint purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 77 of the Complaint, and therefore denies them.

78. To the extent the allegations in Paragraph 78 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 78 of the Complaint.

79. To the extent the allegations in Paragraph 79 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 79 of the Complaint, and therefore denies them.

80. To the extent the allegations in Paragraph 80 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies that the '416 Patent employs an "unconventional method of performing filtering." Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 80 of the Complaint, and therefore denies them.

81. To the extent the allegations in Paragraph 81 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies that the '416 Patent provides a "specific technological improvement to the functionality and capabilities of video coding technology." Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 81 of the Complaint, and therefore

denies them.

82. Denied.

83. Denied.

84. To the extent the allegations in Paragraph 84 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 84 of the Complaint, and therefore denies them.

85. Paragraph 85 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 85 of the Complaint, and therefore denies them.

**D. U.S. Patent No. 10,194,168**

86. Snap admits that the document attached as Exhibit 26 to the Complaint purports on its face to be a copy of U.S. Patent No. 10,194,168 (the "'168 Patent"). To the extent the allegations in Paragraph 86 of the Complaint purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 86 of the Complaint, and therefore denies them.

87. To the extent the allegations in Paragraph 87 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 87 of the Complaint.

88. To the extent the allegations in Paragraph 88 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 88 of the Complaint.

89. Denied.

90. To the extent the allegations in Paragraph 90 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 90 of the Complaint.

91. To the extent the allegations in Paragraph 91 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 91 of the Complaint.

92. Denied.

93. Denied.

94. To the extent the allegations in Paragraph 94 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 94 of the Complaint.

95. Paragraph 95 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 95 of the Complaint, and therefore denies them.

**E. U.S. Patent No. 10,742,996**

96. To the extent the allegations in Paragraph 96 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 96 of the Complaint.

97. Snap admits that the document attached as Exhibit 27 to the Complaint purports on its face to be a copy of U.S. Patent No. 10,742,996 (the "'996 Patent"). To the extent the allegations in Paragraph 97 of the Complaint purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 97 of the Complaint, and therefore denies them.

98. To the extent the allegations in Paragraph 98 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 98 of the Complaint.

99. To the extent the allegations in Paragraph 99 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 99 of the Complaint.

100. To the extent the allegations in Paragraph 100 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 100 of the Complaint.

101. To the extent the allegations in Paragraph 101 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 101 of the Complaint.

102. To the extent the allegations in Paragraph 102 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 102 of the Complaint.

103. Denied.

104. Denied.

105. To the extent the allegations in Paragraph 105 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 105 of the Complaint.

106. Paragraph 106 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 106 of the Complaint, and therefore denies them.

**F. U.S. Patent No. 10,003,820**

107. Snap admits that the document attached as Exhibit 28 to the Complaint purports on its face to be a copy of U.S. Patent No. 10,003,820 (the "'820 Patent"). To the extent the allegations in Paragraph 107 of the Complaint purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 107 of the Complaint, and therefore denies them.

108. To the extent the allegations in Paragraph 108 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 108 of the Complaint.

109. To the extent the allegations in Paragraph 109 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 109 of the Complaint.

110. To the extent the allegations in Paragraph 110 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 110 of the Complaint.

111. To the extent the allegations in Paragraph 111 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 111 of the Complaint.

112. To the extent the allegations in Paragraph 112 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 112 of the Complaint.

113. Denied.

114. Denied.

115. To the extent the allegations in Paragraph 115 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 115 of the Complaint.

116. Paragraph 116 sets forth legal conclusions to which no answer is required. To the extent a response is required, Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 116 of the Complaint, and therefore denies them.

**COUNT I: [ALLEGED] PATENT INFRINGEMENT OF THE ’643 PATENT**

117. Snap incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

118. Denied.

119. Denied.

120. Denied.

121. Denied.

122. Denied.

123. Denied.

124. To the extent the allegations in Paragraph 124 purport to quote from or characterize the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 124 of the Complaint.

125. Denied.

126. Denied.

**COUNT II: [ALLEGED] PATENT INFRINGEMENT OF THE ’182 PATENT**

127. Snap incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

128. Denied.

129. Denied.

130. Denied.

131. Denied.

132. Denied.

133. Denied.

134. To the extent the allegations in Paragraph 134 purport to quote from the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 134 of the Complaint.

135. Denied.

136. Denied.

**COUNT III: [ALLEGED] PATENT INFRINGEMENT OF THE '416 PATENT**

137. Snap incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

138. Denied.

139. Denied.

140. Denied.

141. Denied.

142. Denied.

143. Denied.

144. To the extent the allegations in Paragraph 144 purport to quote from the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 144 of the Complaint.

145. Denied.

146. Denied.

## COUNT IV: [ALLEGED] PATENT INFRINGEMENT OF THE ’168 PATENT

147. Snap incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

148. Denied.

149. Denied.

150. Denied.

151. Denied.

152. Denied.

153. Denied.

154. To the extent the allegations in Paragraph 154 purport to quote from the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 154 of the Complaint.

155. Denied.

156. Denied.

## COUNT V: [ALLEGED] PATENT INFRINGEMENT OF THE ’996 PATENT

157. Snap incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

158. Denied.

159. Denied.

160. Denied.

161. Denied.

162. Denied.

163. Denied.

164. To the extent the allegations in Paragraph 164 purport to quote from the contents

of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 164 of the Complaint.

165. Denied.

166. Denied.

**COUNT VI: [ALLEGED] PATENT INFRINGEMENT OF THE ’820 PATENT**

167. Snap incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

168. Denied.

169. Denied.

170. Denied.

171. Denied.

172. Denied.

173. Denied.

174. To the extent the allegations in Paragraph 174 purport to quote from the contents of a written document, said document speaks for itself. Snap denies any remaining allegations in Paragraph 174 of the Complaint.

175. Denied.

176. Denied.

**COUNT VII: DECLARATORY JUDGMENT THAT PLAINTIFFS HAVE [ALLEGEDLY] COMPLIED WITH THEIR RAND COMMITMENTS**

177. Snap incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

178. Snap admits that it makes and uses products that use and comply with the H.265 video coding standard (also referred to as the “H.265 Recommendation”). Snap denies the

remaining allegations in Paragraph 178 of the Complaint.

179. Snap lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 179 of the Complaint, and therefore denies them.

180. Denied.

181. Denied.

182. Snap admits that it contends Plaintiffs have not satisfied their RAND obligations. Snap denies the remaining allegations in Paragraph 182 of the Complaint, and specifically denies that Plaintiffs have complied with their RAND commitments.

183. Paragraph 183 is a statement of declaratory relief that Plaintiffs are seeking, for which no response is required. To the extent a response is required, Snap denies that Plaintiffs have negotiated in good faith toward a license with Snap for any alleged essential patent claims and further denies that Plaintiffs have complied with their obligations under the ITU IPR Policy and Plaintiffs' relevant Patent Statement and Licensing declarations.

## ATTORNEYS' FEES

184. Denied.

## DEMAND FOR JURY TRIAL

185. Paragraph 185 consists of a jury demand for which no response is required.

## RESPONSE TO PRAYER FOR RELIEF

The remainder of Plaintiffs' Complaint recites a prayer for relief for which no response is required. To the extent a response is required, Snap denies that Plaintiffs are entitled to any remedy or relief, including but not limited to any finding of infringement, any finding of willfulness, any award of damages (actual or enhanced), any injunctive relief, any declaration that Plaintiffs have complied with their RAND obligations, or any award of attorneys' fees or costs.

## SNAP'S DEFENSES

Snap asserts the following defenses in response to the allegations in Plaintiffs' Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. Snap reserves the right to assert any additional defenses as they become known during the course of this action.

### FIRST DEFENSE: NONINFRINGEMENT

Snap has not (i) directly infringed, either literally or under the doctrine of equivalents, or (ii) indirectly infringed, by inducement or contributory infringement, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '643 Patent, the '182 Patent, the '416 Patent, the '168 Patent, the '996 Patent, or the '820 Patent (collectively, the "Asserted Patents"), and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

### SECOND DEFENSE: INVALIDITY

Plaintiffs' claims for infringement of the Asserted Patents are barred because every asserted claim of the Asserted Patents is invalid for failing to comply with the requirements of Title 35 of the United States Code, including at least Sections 101, 102, 103, 112, and/or 116, or judicially-created doctrines of invalidity, including, but not limited to, obviousness-type double patenting, or the Rules and Regulations of the United States Patent and Trademark Office relating thereto.

### THIRD DEFENSE: LIMITATION ON DAMAGES

Plaintiffs' claims for relief are barred, in whole or in part, by operation of the applicable statutes that limit damages and other relief, including, but not limited to, 35 U.S.C. §§ 286, 287, and 288.

### FOURTH DEFENSE: PROSECUTION HISTORY ESTOPPEL

Plaintiffs are estopped based on any amendments, arguments, statements, representations,

concessions, and/or admissions made during prosecution of the applications that led to Asserted Patents from asserting any interpretation of the claims of the Asserted Patents that would be broad enough to cover any of Snap's products or methods alleged to infringe the Asserted Patents.

**FIFTH DEFENSE: EXPRESS WAIVER**

Plaintiffs' claims are barred, in whole or in part, by the doctrine of express waiver.

On March 13, 2018, Access Advance (then known as HEVC Advance) announced that it "will no longer license nor seek royalty fees for *non-physical HEVC content distribution* including Internet streaming," and that it was doing so explicitly "in an effort to further accelerate HEVC adoption and support streaming . . . distributors to bring the best video experience to consumers."[3] As of the time of this announcement and at all times thereafter, Plaintiffs were licensors for the HEVC Advance Patent Pool and benefited from royalties received through the HEVC Advance Patent Pool. All claims of all patents that are licensed through Access Advance, including all Asserted Patents licensed through Access Advance, are unenforceable against Snap's non-physical HEVC content distribution including Internet streaming because Access Advance, as Plaintiffs' authorized licensing agent, irrevocably waived the right to seek royalty fees for non-physical HEVC content distribution including Internet streaming, and because Plaintiffs adopted and ratified that express waiver through years of acquiescence and acceptance of benefits.

**SIXTH DEFENSE: OTHER EQUITABLE DOCTRINES**

Plaintiffs' claims are barred, in whole or in part, by the doctrines of acquiescence, legal estoppel, equitable estoppel, promissory estoppel, and/or implied license.

---

[3]https://accessadvance.com/2018/03/13/hevc-advance-eliminates-content-distribution-royalty-fees-and-reduces-certain-royalty-rates-and-caps/

**SEVENTH DEFENSE: FAILURE TO COMPLY WITH RAND OBLIGATIONS**

Plaintiffs' claims are barred, in whole or in part, for failure to comply with and corresponding breach of the undertakings and obligations to standard-setting organizations ("SSOs") related to the Asserted Patents. By way of example, Plaintiffs' claims for injunctive relief and damages are barred, in whole or in part, for failure to comply with, and corresponding breach of obligations to license the Asserted Patents in the Complaint on, RAND terms and conditions.

**EIGHTH DEFENSE: IMPLIED WAIVER FOR FAILURE TO DISCLOSE TO STANDARD-SETTING ORGANIZATIONS**

Plaintiffs' claims are barred, in whole or in part, for failure to timely disclose the Asserted Patents, including parent patents and patent applications, to SSOs related to the HEVC video coding standard during the development of those standards. Plaintiffs and prior assignees of the Asserted Patents had an express or implied duty to disclose to an SSO the Asserted Patents or related patents and patent applications. Plaintiffs, their affiliates, and/or prior assignees of the Asserted Patents breached that duty by failing to timely disclose the Asserted Patents, including parent patents and patent applications, to SSOs of which Plaintiffs or prior assignees were a member or were aware. That breach renders the Asserted Patents unenforceable under the doctrine of implied waiver.

**NINTH DEFENSE: LICENSE AND EXHAUSTION**

Plaintiffs' claims are exhausted to the extent that Snap, or any of its affiliates, subsidiaries, suppliers, providers, customers, or manufacturers of third-party devices on which Snap's accused products and services are used, have received a license to the Asserted Patents. By way of example, Snap's accused Snapchat application runs on third-party user devices. To the extent those devices are licensed to any Asserted Patent, Plaintiffs' claims are entirely licensed or at least exhausted with respect to that Asserted Patent for acts of alleged infringement with respect to such licensed

devices. By way of further example, to the extent that Snap's accused video coding activities are performed by third parties that have a license to any Asserted Patent, Plaintiffs' claims are exhausted with respect to that Asserted Patent for acts of alleged infringement committed by that third party.

**TENTH DEFENSE: NO WILLFUL INFRINGEMENT OR ENHANCEMENT**

Plaintiffs are not entitled to enhanced damages under 35 U.S.C. § 284 because Plaintiffs have failed to meet, and cannot meet as a matter of law, the requirements for willful infringement or enhancement of damages.

**ELEVENTH DEFENSE: NO EXCEPTIONAL CASE**

Plaintiffs' Complaint fails to state a claim for relief against Snap that would qualify as an exceptional case under 35 U.S.C. § 285.

**TWELFTH DEFENSE: NO INJUNCTIVE RELIEF**

Plaintiffs are not entitled to any injunctive relief for alleged infringement of the Asserted Patents because any alleged injury to Plaintiffs is not immediate or irreparable, the balance of hardships and public interest weighs against the grant of an injunction, and Plaintiffs have an adequate remedy at law.

**THIRTEENTH DEFENSE: ENSNAREMENT**

Plaintiffs' claims are barred, in whole or in part, by the ensnarement doctrine. To the extent that Plaintiffs seek to extend the scope of the Asserted Patents to cover subject matter that was known or would have been obvious to a person of ordinary skill in the art at the time of the alleged invention(s), application of the doctrine of equivalents to the Accused Services would impermissibly ensnare the prior art.

**FOURTEENTH DEFENSE: FAILURE TO STATE A CLAIM**

The Complaint fails to state a claim upon which relief may be granted.

## RESERVATION OF RIGHTS

Snap reserves the right to assert any additional defenses that may be determined during the course of discovery.

## JURY DEMAND

Snap demands a jury trial of all issues so triable under Federal Rule of Civil Procedure 38(b).

## COUNTERCLAIMS

Counterclaimant Snap Inc. ("Snap"), by and through its undersigned counsel, hereby asserts the following counterclaims against Counterclaim-Defendants Electronics and Telecommunications Research Institute ("ETRI"), University-Industry Cooperation Group of Kyung Hee University ("Kyung Hee University"), Industry-University Cooperation Foundation of Korea Aerospace University ("KAU"), Kwangwoon University Industry-Academic Collaboration Foundation ("Kwangwoon University") (collectively, "Plaintiffs"), and Access Advance LLC ("Access Advance"), as follows.

## PARTIES

1. Snap is a corporation organized under the laws of the State of Delaware, with places of business at 2772 Donald Douglas Loop N, Santa Monica, CA 90405, and 3000 31st Street, Santa Monica, CA 90405.

2. According to the Complaint (D.I. 17 at ¶ 7),[4] ETRI is based in the Republic of Korea.

3. According to the Complaint (D.I. 17 at ¶ 8), Kyung Hee University is based in the Republic of Korea.

---

[4] As used in these Counterclaims, unless otherwise noted, "Complaint" refers to the First Amended Complaint, D.I. 17.

4. According to the Complaint (D.I. 17 at ¶ 9), KAU is based in the Republic of Korea.

5. According to the Complaint (D.I. 17 at ¶ 10), Kwangwoon University is based in the Republic of Korea.

6. Upon information and belief, Access Advance is a limited liability company organized under the laws of the State of Delaware and has a principal place of business at 100 Cambridge Street, Suite 21400, Boston, MA 02114. Upon information and belief, Access Advance has designated Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808, as its registered agent.

**JURISDICTION AND VENUE**

7. These are counterclaims for declaratory judgment under 28 U.S.C. §§ 2201 and 2202 concerning patent non-infringement, patent invalidity, patent unenforceability, and breach of reasonable and nondiscriminatory ("RAND") obligations as to U.S. Patent Nos. 11,595,643, 9,883,182, 10,021,416, 10,194,168, 10,742,996, and 10,003,820 (collectively, the "Asserted Patents"). The Complaint purports to accuse Snap's applications and backend processes, together with associated equipment, of infringing the Asserted Patents (the "Accused Services"). D.I. 17 at ¶ 5.

8. This Court has subject matter jurisdiction over Snap's counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over Snap's additional counterclaims pursuant to 28 U.S.C. § 1367, because those claims arise out of facts that are directly related to Snap's claims such that they form part of the same case or controversy within this Court's original jurisdiction.

9. This Court has personal jurisdiction over Electronics and Telecommunications Research Institute because it has submitted to the jurisdiction of this Court by bringing the

present action through the filing of the original complaint (D.I. 1) and operative Complaint.

10. This Court has personal jurisdiction over University-Industry Cooperation Group of Kyung Hee University because it has submitted to the jurisdiction of this Court by bringing the present action through the filing of the original complaint (D.I. 1) and operative Complaint.

11. This Court has personal jurisdiction over Industry-University Cooperation Foundation of Korea Aerospace University because it has submitted to the jurisdiction of this Court by bringing the present action through the filing of the operative Complaint.

12. This Court has personal jurisdiction over Kwangwoon University Industry-Academic Collaboration Foundation because it has submitted to the jurisdiction of this Court by bringing the present action through the filing of the operative Complaint.

13. This Court has personal jurisdiction over Access Advance because Access Advance is a limited liability company organized under the laws of Delaware, and Access Advance acted as Plaintiffs' agent in connection with the enforcement campaign giving rise to these counterclaims, including the patent-enforcement action pending in this Court.

14. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b).

15. ETRI, Kyung Hee University, KAU, and Kwangwoon University have consented to venue in this Court because they have filed their claims for patent infringement in this Court, in response to which these Counterclaims are asserted.

16. Venue is proper in this District as to Access Advance under 28 U.S.C. § 1391 because Access Advance resides in the State of Delaware.

## ETRI'S, KYUNG HEE UNIVERSITY'S, KAU'S, KWANGWOON UNIVERSITY'S, AND ACCESS ADVANCE'S WAIVER OF RIGHTS AS TO H.265 (HEVC)

17. Access Advance is a licensing administrator company established in 2015 that offers licenses in relation to three patent pools of alleged standard-essential patents for

standards-based video codec technologies.

18. Access Advance contends that its licensing approach is market-driven, modern, efficient, and transparent, and that its licensing offers are at RAND rates.

19. Access Advance historically offered, and continues to offer, licenses to the HEVC Advance Patent Pool for patents allegedly essential to the HEVC/H.265 standard. Under its HEVC Advance Patent Pool, Access Advance licenses HEVC Decoders and HEVC Encoders in consumer HEVC products, including mobile phones, TVs, video game consoles, and desktop PCs.

20. On September 5, 2017, Access Advance (then known as HEVC Advance) announced that ETRI had joined the HEVC Advance Patent Pool as a licensor.[5]

21. On March 13, 2018, Access Advance (then known as HEVC Advance) announced that it "will no longer license nor seek royalty fees for non-physical HEVC content distribution including Internet streaming," and that it was doing so explicitly "in an effort to further accelerate HEVC adoption and support streaming . . . distributors to bring the best video experience to consumers."[6] As of the time of this announcement and at all times thereafter, ETRI was a licensor for the HEVC Advance Patent Pool.

22. Access Advance's March 13, 2018, announcement was unconditional. It contained no temporal limitation, no sunset provision, no reservation of the right to seek royalty fees for Internet streaming at a future date, and no qualification limiting the commitment to any particular licensing mechanism or enforcement vehicle. The announcement stated that Access Advance "will no longer" seek streaming royalties—language that is permanent and forward-

---

[5] https://accessadvance.com/2017/09/05/etri-joins-hevc-advance/

[6] https://accessadvance.com/2018/03/13/hevc-advance-eliminates-content-distribution-royalty-fees-and-reduces-certain-royalty-rates-and-caps/

looking on its face.

23. Access Advance made the March 13, 2018, announcement in its capacity as licensing administrator on behalf of the HEVC Advance pool's licensors, including ETRI. Access Advance did not purport to speak solely for itself—it spoke for the pool and therefore for its licensors collectively, as it was authorized to do in its role as licensing administrator.

24. At the time of the March 13, 2018, announcement, Access Advance had the authority, as ETRI's authorized licensing agent, to define the scope of licensing activities undertaken on ETRI's behalf, to communicate licensing positions to the market on behalf of ETRI and other pool licensors, and to commit to the terms and conditions under which royalties would or would not be sought for uses of the patents contributed to the pool. On information and belief, Access Advance at all relevant times has been authorized, on behalf of itself, its pool licensors (including ETRI, Kyung Hee University, KAU, and Kwangwoon University), and its pool licensors' affiliates (including ETRI's affiliates, Kyung Hee University's affiliates, KAU's affiliates, and Kwangwoon University's affiliates), to grant releases from all claims, demands, actions, and rights of action based on acts of alleged infringement of the patents in the patent pools administered by Access Advance. The decision to not seek royalty fees for Internet streaming was within the scope of Access Advance's authority as ETRI's licensing agent.

25. Three weeks later, on April 3, 2018, Access Advance (then known as HEVC Advance) announced that twelve new entities had joined as licensors, including KAU, and licensees, and stated that this "follows on the positive market reaction to HEVC Advance's recent decision to no longer license or seek royalty fees for non-physical HEVC content

distribution including Internet streaming, cable, over-the-air broadcast, and satellite."[7]

26. ETRI knew of Access Advance's March 13, 2018, announcement at the time it was made or shortly thereafter. ETRI did not object to the announcement, did not publicly or privately disavow it, did not withdraw its patents from the HEVC Advance pool, and did not communicate to Snap or to any other market participant that ETRI reserved any right to seek royalties for Internet streaming notwithstanding Access Advance's public commitment.

27. KAU knew of Access Advance's April 3, 2018, announcement at the time it was made or shortly thereafter. KAU did not object to the announcement, did not publicly or privately disavow it, did not withdraw its patents from the HEVC Advance pool, and did not communicate to Snap or to any other market participant that KAU reserved any right to seek royalties for Internet streaming notwithstanding Access Advance's public commitment.

28. On information and belief, Kyung Hee University and Kwangwoon University are, and at all relevant times have been, licensors in the HEVC Advance Patent Pool. On information and belief, each joined the HEVC Advance Patent Pool, or remained in the pool, with knowledge of Access Advance's public commitment to no longer license or seek royalty fees for non-physical HEVC content distribution including Internet streaming. Neither Kyung Hee University nor Kwangwoon University objected to that commitment, publicly or privately disavowed it, withdrew its patents from the HEVC Advance pool, or communicated to Snap or to any other market participant that it reserved any right to seek royalties for Internet streaming notwithstanding Access Advance's public commitment. On information and belief, Kyung Hee University and Kwangwoon University have accepted distributions of royalty revenue generated

---

7 https://accessadvance.com/2018/04/03/hevc-advance-highlights-momentum-with-newest-licensors-and-licensees/

under the post-2018 licensing structure.

29. ETRI's, KAU's, Kyung Hee University's, and Kwangwoon University's silence, continued participation in the pool, and acceptance of distributions of royalty revenue generated under the post-2018 licensing structure constituted ratification of Access Advance's waiver.

30. As of today, Access Advance claims to have more than 400 licensees of its HEVC Advance Patent Pool, including Snap, which is a current licensee.

31. Following Access Advance's announcement to "no longer license nor seek royalty fees for non-physical HEVC content distribution including Internet streaming" in order to "accelerate HEVC adoption," the adoption rate of consumer products supporting HEVC increased from the time of Access Advance's announcement to today.

32. From March 13, 2018 through at least January 16, 2025—a period of nearly seven years—neither Access Advance nor ETRI nor Kyung Hee University nor KAU nor Kwangwoon University sought royalty fees from Snap, or upon information and belief from any other entity, for non-physical HEVC content distribution including Internet streaming. During this entire period, on information and belief, ETRI continued to serve as a licensor in the HEVC Advance pool and accepted distributions of royalty revenue generated under the post-2018 licensing structure.

33. After relinquishing streaming royalties, Access Advance and its licensors—including ETRI, KAU, Kyung Hee University and Kwangwoon University—received the benefit of continued HEVC adoption. As alleged above, the adoption rate of consumer products supporting HEVC increased following the March 2018 announcement. Each additional HEVC-capable device entering the market generated device-side royalties payable to the HEVC Advance pool for distribution to licensors. On information and belief, Access Advance's

elimination of streaming royalties was a strategic decision to forgo one revenue stream in order to enhance another.

34. Access Advance, ETRI, Kyung Hee University, KAU, and Kwangwoon University cannot unilaterally revoke a commitment that was followed by market-wide adoption of HEVC and years of enhanced device royalty revenue for ETRI and other pool licensors. During the seven-year period referenced above, an ecosystem of HEVC-based streaming services, infrastructure, and device support was built. Permitting Access Advance, ETRI, Kyung Hee University, KAU, and Kwangwoon University to reimpose streaming royalties retroactively on participants in this ecosystem—including Snap—would impose liability for conduct that Access Advance, ETRI, Kyung Hee University, KAU, and Kwangwoon University represented to be royalty-free.

35. On January 16, 2025, Access Advance changed course and announced the introduction of its Video Distribution Patent ("VDP") Pool through which Access Advance now seeks to license and seek royalty fees for non-physical HEVC content distribution including Internet streaming.

36. The VDP Pool is not limited to patents that are allegedly essential to the HEVC (H.265) video coding standard but instead bundles patents that are allegedly essential to each of the HEVC (H.265), AV1, VVC (H.266), and VP9 video coding standards.

37. ETRI is a principal architect and driving force behind Access Advance's licensing and enforcement programs. As a major holder of allegedly-standard-essential patents, ETRI is a licensor in multiple Access Advance-administered pools, including the HEVC Advance Patent Pool and the VDP Pool, and has designated Access Advance to administer licensing on its behalf. Through these arrangements, ETRI retains ownership of its patents and

the economic and strategic interests in their monetization, while Access Advance serves as the centralized vehicle through which licensing terms are presented and enforcement positions are communicated to the market. ETRI's participation across multiple pools, combined with its aligned enforcement activity and coordination with Access Advance's licensing framework, as well as ETRI's ownership-in-part of Access Advance, reflects that Access Advance's programs advance and implement the strategic objectives of its most significant licensors, including ETRI.

## ETRI'S, KYUNG HEE UNIVERSITY'S, KAU'S, AND KWANGWOON UNIVERSITY'S RAND OBLIGATIONS AND FAILURE TO MAKE A RAND OFFER

38. ETRI's, Kyung Hee University's, KAU's, and Kwangwoon University's Complaint alleges that Snap infringes the Asserted Patents through alleged use of the HEVC (H.265) video coding standard.

39. Standard-setting organizations ("SSOs") have developed policies requiring participants to disclose patents that may be essential to implementing proposed standards and to commit to licensing those patents on reasonable and nondiscriminatory ("RAND") terms. Courts have recognized that such policies create enforceable obligations that run with the patents to successors and assignees.

40. The International Telecommunication Union ("ITU"), a specialized agency of the United Nations, develops telecommunications standards including the HEVC (H.265) video coding standard. The ITU maintains a Common Patent Policy and Guidelines that require participants to disclose patents potentially essential to implementing ITU standards and to provide licensing declarations committing to RAND terms. These declarations create binding commitments for the benefit of all implementers of the standard.

41. Plaintiffs' Complaint acknowledges that Plaintiffs are "prepared to grant licenses for implementations of the H.265 standard to any patent claims essential to the H.265 standard

on reasonable and non-discriminatory ("RAND") terms and conditions as set forth in the ITU Common Patent Policy." D.I. 17 at ¶ 38. These commitments are binding on Plaintiffs with respect to any patents they assert as essential to the HEVC standard.

42. Plaintiffs have failed to offer a license to the Asserted Patents to Snap on RAND terms and conditions. Indeed, none of the Plaintiffs have offered any license to the Asserted Patents to Snap.

43. The only offer made to Snap prior to the filing of the Complaint that would have included a license to any Asserted Patents for the conduct that Plaintiffs accuse of infringement is a demand by Access Advance, Plaintiffs' licensing agent, that Snap join the VDP Pool, which includes not only certain Asserted Patents but additional patents owned by other licensors and that purportedly cover four different video coding standards, HEVC (H.265), AV1, VVC (H.266), and VP9. The VDP Pool does not cover AVC (H.264). Access Advance's offer to join the VDP Pool is not an offer to license any Asserted Patents on RAND terms and conditions, including because the rates that Access Advance charges for the VDP Pool are supra-RAND—e.g., by requiring payments that far exceed a RAND license rate to any of the Asserted Patents.

44. Apart from Plaintiffs' silence and failure to make any offer to Snap, Access Advance's course of conduct, as Plaintiffs' licensing agent, in communications with Snap also shows an absence of any effort to negotiate in good faith or any effort to meet the RAND obligations that encumber the Asserted Patents. As non-limiting examples, on February 5, 2026, after Access Advance had contacted Snap about the VDP Pool, Snap indicated by email that the parties would need a non-disclosure agreement ("NDA"), as is commonplace in patent licensing negotiations. Access Advance confirmed by email on February 9, 2026, that an NDA "shouldn't be an issue." On March 3, 2026, Snap provided a draft NDA to Access Advance. On March 10,

2026, Access Advance provided initial redlined edits to Snap's draft NDA. On March 17, 2026, Snap provided Access Advance with additional redlines to the NDA in response to Access Advance's comments. On March 18, 2026, instead of providing any feedback or additional revisions to the draft NDA that Snap provided, Access Advance threatened that one of Access Advance's licensors was "imminently" preparing to initiate litigation against Snap, in an effort to pressure Snap to join the VDP Pool "ASAP."

45. On June 12, 2026, Snap reiterated by email that it would be willing to pay a RAND rate for a license of appropriate scope but disagreed that Access Advance's license structure and rate card meet the RAND criteria, including without limitation because it is arbitrary, too high considering the percentage of alleged HEVC patents that Access Advance's licensors own, and bundles together codecs that Snap does not and has not used. Snap also reiterated that Access Advance had failed to provide the terms of its licenses to other licensors, which are important to assess the purported bases for Access Advance's offer and whether it complies with the non-discrimination requirement of RAND. Snap noted that Access Advance had still not responded to Snap on the NDA revisions, nearly three months after Snap provided them. Access Advance then waited more than a week, until June 22, 2026, to respond and provide a redline to the NDA, but the version that Access Advance sent did not reflect all of Snap's changes to the last draft. Nevertheless, on July 3, 2026, Snap provided another draft of the NDA to Access Advance and offered to discuss Access Advance's pool license offer again once the NDA is executed. Plaintiffs filed this suit shortly afterwards on July 17, 2026, without any outreach by any of the Plaintiffs to Snap, reflecting the premature nature of Plaintiffs' lawsuit that is designed to coerce Snap into a non-RAND license.

46. To the extent any Asserted Patent is found valid and essential to the HEVC

standard, Plaintiffs' conduct, directly and (for patents allegedly essential to HEVC) through their licensing agent Access Advance, violates their obligations under at least the ITU Common Patent Policy and Guidelines. Snap, as an implementer of the HEVC standard, is an intended third-party beneficiary of Plaintiffs' RAND commitments and is entitled to enforce those commitments.

47. The RAND obligations that bind Plaintiffs and require each of them to offer licenses to any patents essential to the HEVC standard on RAND terms and conditions apply equally to Access Advance by virtue of its role as the licensing agent for Plaintiffs, as the administrator of a patent pool that includes certain Asserted Patents, and as an affiliate that is part-owned by Plaintiffs. For any Asserted Patent encumbered by a RAND obligation, Access Advance is legally obligated to license any such patent on RAND terms and conditions. Despite this obligation, Access Advance has failed to offer a license to the Asserted Patents to Snap on RAND terms and conditions.

**COUNT I: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 11,595,643 (Against ETRI and Kyung Hee University)**

48. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

49. Through the Complaint, ETRI and Kyung Hee University allege that Snap infringes the '643 Patent.

50. Snap denies infringement, including any allegation of willful infringement, of any valid, enforceable, properly construed claim of the '643 Patent and alleges that Snap has not, and does not, infringe (either literally or under the doctrine of equivalents), directly or indirectly, any valid, enforceable, properly construed claim of the '643 Patent.

51. Snap's Accused Services do not practice any claim of the '643 Patent. Snap does

not make, use, sell, offer to sell, or import any product or service that falls within the scope of any claim of the ’643 Patent, either literally or under the doctrine of equivalents. In particular, for example and without limitation, Snap's Accused Services fail to satisfy at least the limitations of “determining a transform type of the current block to be a DCT … or a DST,” “when a size of the current block corresponds to 4×4 and a color component of the current block is a luma component, the inverse-transform is performed by using DST in horizontal and vertical transform directions, for all intra prediction direction mode and a planar mode of the current block,” “determining a scan type of the current block based on the intra prediction mode of the current block,” and “deriving residual coefficients of the current block based on the scan type of the current block.”

52. Snap also does not infringe, and has not infringed, because and to the extent that the accused activity is initiated by and carried out for the benefit of end users operating consumer devices licensed under Access Advance’s HEVC Advance patent pool, where the videos at issue were encoded into the HEVC format on devices authorized under the Asserted Patents, and any subsequent actions occur in response to and at the direction of those licensed users.

53. Snap also does not, and has not, indirectly infringed due to the absence of the requisite specific intent to induce infringement. The initial encoding and final decoding of video are carried out on consumer devices using those devices’ built-in codec implementations, rather than any encoder or decoder for which Snap could allegedly have knowledge. Any backend transcoding is carried out by or through third-party providers, including those using their own proprietary systems and configurations, for which Snap could not have sufficient knowledge of the specific acts alleged to constitute direct infringement. Furthermore, Snap has not taken any “active steps to encourage direct infringement” by any third party, and the Complaint alleges

none.

54. In addition, all claims of the ’643 Patent are unenforceable against Snap’s non-physical HEVC content distribution including Internet streaming because ETRI and Kyung Hee University’s authorized licensing agent irrevocably waived the right to seek royalty fees for non-physical HEVC content distribution including Internet streaming, and because ETRI and Kyung Hee University ratified that waiver through over eight years of acquiescence and acceptance of benefits.

55. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the alleged infringement of the ’643 Patent.

56. Snap seeks a judicial declaration that its Accused Services do not infringe any valid and/or enforceable claim of the ’643 Patent.

**COUNT II: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 11,595,643 (Against ETRI and Kyung Hee University)**

57. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

58. Snap seeks a declaratory judgment that the claims of the ’643 Patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and 112.

59. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the invalidity of the ’643 Patent.

60. The claims of the ’643 Patent are invalid at least because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101, including abstract ideas implemented on

generic computer components without an inventive concept. In particular, the claims of the '643 Patent are invalid under 35 U.S.C. § 101 because they are directed to the abstract idea of choosing a particular mathematical algorithm suitable for the type of data and do not recite any inventive concept sufficient to confer patent eligibility, as the additional claim limitations merely implement the abstract mathematical decision rule on conventional computer hardware using well-understood, routine, and conventional techniques long known in the video coding art.

61. The claims of the '643 Patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 because they are anticipated by and/or obvious in view of prior art references that predate the alleged invention(s). In particular, for example and without limitation, the claims of the '643 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more prior art references, alone or in combination, including U.S. Patent Application Publication No. 2012/0057630 to Saxena et al., entitled "Low Complexity Transform Coding Using Adaptive Dct/Dst for Intra-Prediction," published March 8, 2012, Saxena et al., "CE7: Mode-dependent DCT/DST without 4×4 full matrix multiplication for intra prediction," Samsung, March 2011, JCTVC-E125, Saxena et al., "CE7: On secondary transforms for intra prediction residual," Samsung, February 2012, JCTVC-H0125, and Chono, "BoG Report on Intra mode coding cleanup and simplification," February 2012, JCTVC-H0712.

62. The claims of the '643 Patent are invalid at least under 35 U.S.C. § 112 because they fail to satisfy the requirements of written description, enablement, and definiteness. In particular, for example and without limitation, the claims of the '643 Patent are invalid under 35 U.S.C. § 112 as indefinite because the scope of the phrases "determining a transform type of the current block to be a DCT (Discrete Cosine Transform) or a DST (Discrete Sine Transform)"

and "wherein . . . the inverse-transform is performed by using DST in horizontal and vertical transform directions, for all intra prediction direction mode and a planar mode," cannot be determined with reasonable certainty by a person of ordinary skill. A person of ordinary skill in the art cannot determine with reasonable certainty when the "determining" step could ever select DCT for a 4×4 luma block. The claims are also invalid for lacking written description for failing to disclose or support the claimed "the inverse-transform is performed by using DST in horizontal and vertical transform directions, for all intra prediction direction mode and a planar mode." The specification does not disclose or enable using DST in both directions for modes 2–10 or modes 26–34.

63. Snap has been and continues to be threatened with enforcement of the '643 Patent, and ETRI and Kyung Hee University's allegations will continue to harm Snap unless the Court declares the '643 Patent invalid.

64. Snap seeks a judicial declaration that all asserted claims of the '643 Patent are invalid and unenforceable.

**COUNT III: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 9,883,182 (Against ETRI and Kyung Hee University)**

65. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

66. Through the Complaint, ETRI and Kyung Hee University allege that Snap infringes the '182 Patent.

67. Snap denies infringement, including any allegation of willful infringement, of any valid, enforceable, properly construed claim of the '182 Patent and alleges that Snap has not, and does not, infringe (either literally or under the doctrine of equivalents), directly or indirectly, any valid, enforceable, properly construed claim of the '182 Patent.

68. Snap's Accused Services do not practice any claim of the '182 Patent. Snap does not make, use, sell, offer to sell, or import any product or service that falls within the scope of any claim of the '182 Patent, either literally or under the doctrine of equivalents. In particular, for example and without limitation, Snap's Accused Services fail to satisfy at least the limitations of "the reference picture of the current prediction block having a different temporal order from the collocated picture," "the spatial neighboring block and the temporal neighboring block are determined based on a position of a coding block, a size of a block on which a parallel merge processing is applicable, and a size of the coding block," and "a reference picture index of the temporal merging candidate is set to a fixed value of zero."

69. Snap also does not infringe, and has not infringed, because and to the extent that the accused activity is initiated by and carried out for the benefit of end users operating consumer devices licensed under Access Advance's HEVC Advance patent pool, where the videos at issue were encoded into the HEVC format on devices authorized under the Asserted Patents, and any subsequent actions occur in response to and at the direction of those licensed users.

70. Snap also does not, and has not, indirectly infringed due to the absence of the requisite specific intent to induce infringement. The initial encoding and final decoding of video are carried out on consumer devices using those devices' built-in codec implementations, rather than any encoder or decoder for which Snap could allegedly have knowledge. Any backend transcoding is carried out by or through third-party providers, including those using their own proprietary systems and configurations, for which Snap could not have sufficient knowledge of the specific acts alleged to constitute direct infringement. Furthermore, Snap has not taken any "active steps to encourage direct infringement" by any third party, and the Complaint alleges none.

71. In addition, all claims of the ’182 Patent are unenforceable against Snap’s non-physical HEVC content distribution including Internet streaming because ETRI and Kyung Hee University’s authorized licensing agent irrevocably waived the right to seek royalty fees for non-physical HEVC content distribution including Internet streaming, and because ETRI and Kyung Hee University ratified that waiver through over eight years of acquiescence and acceptance of benefits.

72. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the alleged infringement of the ’182 Patent.

73. Snap seeks a judicial declaration that its Accused Services do not infringe any valid and/or enforceable claim of the ’182 Patent.

**COUNT IV: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 9,883,182 (Against ETRI and Kyung Hee University)**

74. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

75. Snap seeks a declaratory judgment that the claims of the ’182 Patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and 112.

76. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the invalidity of the ’182 Patent.

77. The claims of the ’182 Patent are invalid at least because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101, including abstract ideas implemented on generic computer components without an inventive concept. In particular, the claims of the ’182

Patent are invalid under 35 U.S.C. § 101 because they are directed to the abstract idea of removing a dependency to allow parallel processing, and do not recite any inventive concept sufficient to transform that abstraction into patent-eligible subject matter, as the remaining claim elements only apply that mathematical assignment rule within a conventional video encoder or decoder architecture using standard processing hardware.

78. The claims of the ’182 Patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 because they are anticipated by and/or obvious in view of prior art references that predate the alleged invention(s). In particular, for example and without limitation, the claims of the ’182 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more prior art references, alone or in combination, including U.S. Patent Application Publication No. 2013/0272404, “Method of Decoding Video Signal,” Park et al., published October 17, 2013, Wen et al., “Non-CE9 Parallel Merge/skip Mode for HEVC,” Hong Kong University of Science and Technology, November 29, 2011, JCTVC-G387, Jeon et al., “Non-CE9: simplification of merge/skip TMVP ref_idx derivation,” LG, November 27, 2011, JCTVC-G163, and Bross et al., “Simplification of temporal motion vector (TMVP) candidate derivation for Merge and AMVP // Working Draft of HEVC,” November 22, 2011, JCTVC-G552.

79. The claims of the ’182 Patent are invalid at least under 35 U.S.C. § 112 because they fail to satisfy the requirements of written description, enablement, and definiteness. In particular, for example and without limitation, the claims of the ’182 Patent are invalid under 35 U.S.C. § 112 as indefinite for reciting “a size of a block on which a parallel merge processing is applicable,” because this term lacks reasonable certainty to a person of ordinary skill. The claims are also indefinite because the scope of “the reference picture of the current prediction block having a different temporal order from the collocated picture,” cannot be determined with

reasonable certainty by a person of ordinary skill. The claims are also invalid for lacking written description and enablement for failing to disclose or support the claimed spatial merging candidate's reference picture index being "determined based on a reference picture of the spatial neighboring block" while the temporal merging candidate's reference picture index is "set to a fixed value of zero," in conjunction with the determination of neighboring blocks based on three specific parameters is not disclosed as a unified embodiment in the specification.

80. Snap has been and continues to be threatened with enforcement of the '182 Patent, and ETRI and Kyung Hee University's allegations will continue to harm Snap unless the Court declares the '182 Patent invalid.

81. Snap seeks a judicial declaration that all asserted claims of the '182 Patent are invalid and unenforceable.

**COUNT V: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 10,021,416 (Against ETRI)**

82. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

83. Through the Complaint, ETRI alleges that Snap infringes the '416 Patent.

84. Snap denies infringement, including any allegation of willful infringement, of any valid, enforceable, properly construed claim of the '416 Patent and alleges that Snap has not, and does not, infringe (either literally or under the doctrine of equivalents), directly or indirectly, any valid, enforceable, properly construed claim of the '416 Patent.

85. Snap's Accused Services do not practice any claim of the '416 Patent. Snap does not make, use, sell, offer to sell, or import any product or service that falls within the scope of any claim of the '416 Patent, either literally or under the doctrine of equivalents. In particular, for example and without limitation, Snap's Accused Services fail to satisfy at least the

limitations of "generating prediction values of filtered prediction pixels of the prediction block using a filter for the DC mode using pixel values of reconstructed reference pixels that are adjacent to the current block," "a filter shape, filter tap, and a plurality of filter coefficients of the filter for the DC mode are fixed for a plurality of block sizes of the current block," and "generating a prediction block by performing intra prediction on the current block for a DC mode in response to the determined intra prediction mode being the DC mode."

86. Snap also does not infringe, and has not infringed, because and to the extent that the accused activity is initiated by and carried out for the benefit of end users operating consumer devices licensed under Access Advance's HEVC Advance patent pool, where the videos at issue were encoded into the HEVC format on devices authorized under the Asserted Patents, and any subsequent actions occur in response to and at the direction of those licensed users.

87. Snap also does not, and has not, indirectly infringed due to the absence of the requisite specific intent to induce infringement. The initial encoding and final decoding of video are carried out on consumer devices using those devices' built-in codec implementations, rather than any encoder or decoder for which Snap could allegedly have knowledge. Any backend transcoding is carried out by or through third-party providers, including those using their own proprietary systems and configurations, for which Snap could not have sufficient knowledge of the specific acts alleged to constitute direct infringement. Furthermore, Snap has not taken any "active steps to encourage direct infringement" by any third party, and the Complaint alleges none.

88. In addition, all claims of the '416 Patent are unenforceable against Snap's non-physical HEVC content distribution including Internet streaming because ETRI's authorized licensing agent irrevocably waived the right to seek royalty fees for non-physical HEVC content

distribution including Internet streaming, and because ETRI ratified that waiver through over eight years of acquiescence and acceptance of benefits.

89. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the alleged infringement of the ’416 Patent.

90. Snap seeks a judicial declaration that its Accused Services do not infringe any valid and/or enforceable claim of the ’416 Patent.

**COUNT VI: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 10,021,416 (Against ETRI)**

91. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

92. Snap seeks a declaratory judgment that the claims of the ’416 Patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and 112.

93. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the invalidity of the ’416 Patent.

94. The claims of the ’416 Patent are invalid at least because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101, including abstract ideas implemented on generic computer components without an inventive concept. In particular, the claims of the ’416 Patent are invalid under 35 U.S.C. § 101 because they are directed to the abstract ideas of using a quick and simple algorithm (DC mode) and fixing any resulting problems (smoothing), and do not recite any inventive concept beyond applying that mathematical formula within a conventional video encoder or decoder architecture using standard processing hardware

performing conventional operations.

95. The claims of the ’416 Patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 because they are anticipated by and/or obvious in view of prior art references that predate the alleged invention(s). In particular, for example and without limitation, the claims of the ’416 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more prior art references, alone or in combination, including U.S. Patent Application Publication No. 2016/0156930, “Image encoding device, image decoding device, image encoding method, and image decoding method for generating a prediction image,” Minezawa et al., published June 2, 2016, Sugimoto et al., “LUT-based adaptive filtering on intra prediction samples,” Mitsubishi Electric Corporation and NHK (Japan Broadcasting Corporation), January 2011, JCTVC-D109, Sugimoto et al., “CE6.f: LUT-based adaptive filtering on intra prediction samples,” Mitsubishi Electric Corporation and NHK (Japan Broadcasting Corporation), March 2011, JCTVC-E069, and KR Patent Application Publication No. 2011/0065090, “Image encoding method and apparatus, decoding method and apparatus thereof,” Alshina et al., published June 15, 2011.

96. The claims of the ’416 Patent are invalid at least under 35 U.S.C. § 112 because they fail to satisfy the requirements of written description, enablement, and definiteness. In particular, for example and without limitation, the claims of the ’416 Patent are invalid under 35 U.S.C. § 112 as indefinite because the phrase “a filter shape, filter tap, and a plurality of filter coefficients of the filter for the DC mode are fixed for a plurality of block sizes of the current block” cannot be determined with reasonable certainty by a person of ordinary skill in the art. The claims are also invalid for lacking written description for failing to disclose or support the claimed “a filter shape, filter tap, and a plurality of filter coefficients of the filter for the DC mode are fixed,” because the specification does not disclose a single fixed filter applied

uniformly to all filtered prediction pixels.

97. Snap has been and continues to be threatened with enforcement of the ’416 Patent, and ETRI’s allegations will continue to harm Snap unless the Court declares the ’416 Patent invalid.

98. Snap seeks a judicial declaration that all asserted claims of the ’416 Patent are invalid and unenforceable.

**COUNT VII: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 10,194,168 (Against ETRI and KAU)**

99. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

100. Through the Complaint, ETRI and KAU allege that Snap infringes the ’168 Patent.

101. Snap denies infringement, including any allegation of willful infringement, of any valid, enforceable, properly construed claim of the ’168 Patent and alleges that Snap has not, and does not, infringe (either literally or under the doctrine of equivalents), directly or indirectly, any valid, enforceable, properly construed claim of the ’168 Patent.

102. Snap’s Accused Services do not practice any claim of the ’168 Patent. Snap does not make, use, sell, offer to sell, or import any product or service that falls within the scope of any claim of the ’168 Patent, either literally or under the doctrine of equivalents. In particular, for example and without limitation, Snap’s Accused Services fail to satisfy at least the limitations of “determining information on a temporal candidate prediction motion vector based on the information on the plurality of spatial candidate prediction motion vectors,” “the information on the temporal candidate prediction motion vector comprises at least one of temporal candidate prediction motion vector availability information and the temporal candidate

prediction motion vector," and "the temporal candidate prediction motion vector availability information is determined such that the temporal candidate prediction motion vector is unavailable."

103. Snap also does not infringe, and has not infringed, because and to the extent that the accused activity is initiated by and carried out for the benefit of end users operating consumer devices licensed under Access Advance's HEVC Advance patent pool, where the videos at issue were encoded into the HEVC format on devices authorized under the Asserted Patents, and any subsequent actions occur in response to and at the direction of those licensed users.

104. Snap also does not, and has not, indirectly infringed due to the absence of the requisite specific intent to induce infringement. The initial encoding and final decoding of video are carried out on consumer devices using those devices' built-in codec implementations, rather than any encoder or decoder for which Snap could allegedly have knowledge. Any backend transcoding is carried out by or through third-party providers, including those using their own proprietary systems and configurations, for which Snap could not have sufficient knowledge of the specific acts alleged to constitute direct infringement. Furthermore, Snap has not taken any "active steps to encourage direct infringement" by any third party, and the Complaint alleges none.

105. In addition, all claims of the '168 Patent are unenforceable against Snap's non-physical HEVC content distribution including Internet streaming because ETRI and KAU's authorized licensing agent irrevocably waived the right to seek royalty fees for non-physical HEVC content distribution including Internet streaming, and because ETRI and KAU ratified that waiver through over eight years of acquiescence and acceptance of benefits.

106. As evidenced by the allegations in the Complaint, there is now an actual,

substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the alleged infringement of the ’168 Patent.

107. Snap seeks a judicial declaration that its Accused Services do not infringe any valid and/or enforceable claim of the ’168 Patent.

**COUNT VIII: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 10,194,168 (Against ETRI and KAU)**

108. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

109. Snap seeks a declaratory judgment that the claims of the ’168 Patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and 112.

110. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the invalidity of the ’168 Patent.

111. The claims of the ’168 Patent are invalid at least because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101, including abstract ideas implemented on generic computer components without an inventive concept. In particular, the claims of the ’168 Patent are invalid under 35 U.S.C. § 101 because they are directed to the abstract idea of gathering additional information only when the information already collected is insufficient, and do not recite any inventive concept sufficient to transform that abstraction into patent-eligible subject matter, as the additional claim limitations merely implement that abstract mathematical decision rule within a conventional video encoder or decoder architecture using standard processing hardware.

112. The claims of the ’168 Patent are invalid at least under 35 U.S.C. §§ 102 and/or

103 because they are anticipated by and/or obvious in view of prior art references that predate the alleged invention(s). In particular, for example and without limitation, the claims of the ’168 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more prior art references, alone or in combination, including Bross et al., “WD4: Working Draft 4 of High-Efficiency Video Coding,” 6th JCT-VC Meeting, Torino, July 14–22, 2011, JCTVC-F803, U.S. Patent Application Publication No. 2011/0194609, “Selecting Predicted Motion Vector Candidates,” Rusert et al., published August 11, 2011, Yeo et al., “Simplified AMVP candidate derivation for Inter and Merge modes,” Institute for Infocomm Research, March 10, 2011, JCTVC-E101, and Zhou et al., “CE9: Simplified AMVP design (SP06S1, SP06S2),” Texas Instruments and LGE, July 1, 2011, JCTVC-F088.

113. The claims of the ’168 Patent are invalid at least under 35 U.S.C. § 112 because they fail to satisfy the requirements of written description, enablement, and definiteness. In particular, for example and without limitation, the claims of the ’168 Patent are invalid under 35 U.S.C. § 112 as indefinite because the scope of the phrase “determining information on a temporal candidate prediction motion vector based on the information on the plurality of spatial candidate prediction motion vectors” cannot be determined with reasonable certainty by a person of ordinary skill. The claims are also invalid for lacking written description for failing to disclose or support the claimed “temporal candidate prediction motion vector availability information is determined such that the temporal candidate . . . is unavailable,” because the specification discloses that result only where the candidate prediction motion vector list is limited to two candidates.

114. Snap has been and continues to be threatened with enforcement of the ’168 Patent, and ETRI and KAU’s allegations will continue to harm Snap unless the Court declares

the ’168 Patent invalid.

115. Snap seeks a judicial declaration that all asserted claims of the ’168 Patent are invalid and unenforceable.

**COUNT IX: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 10,742,996 (Against ETRI, Kyung Hee University, and Kwangwoon University)**

116. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

117. Through the Complaint, ETRI, Kyung Hee University, and Kwangwoon University allege that Snap infringes the ’996 Patent.

118. Snap denies infringement, including any allegation of willful infringement, of any valid, enforceable, properly construed claim of the ’996 Patent and alleges that Snap has not, and does not, infringe (either literally or under the doctrine of equivalents), directly or indirectly, any valid, enforceable, properly construed claim of the ’996 Patent.

119. Snap’s Accused Services do not practice any claim of the ’996 Patent. Snap does not make, use, sell, offer to sell, or import any product or service that falls within the scope of any claim of the ’996 Patent, either literally or under the doctrine of equivalents. In particular, for example and without limitation, Snap’s Accused Services fail to satisfy at least the limitations of “determining a decoding order among the plurality of the sub-blocks in the block based on the intra prediction mode” and “decoding the plurality of the sub-blocks in the block based on the decoding order.”

120. Snap also does not infringe, and has not infringed, because and to the extent that the accused activity is initiated by and carried out for the benefit of end users operating consumer devices licensed under Access Advance’s HEVC Advance patent pool, where the videos at issue were encoded into the HEVC format on devices authorized under the Asserted Patents, and any

subsequent actions occur in response to and at the direction of those licensed users.

121. Snap also does not, and has not, indirectly infringed due to the absence of the requisite specific intent to induce infringement. The initial encoding and final decoding of video are carried out on consumer devices using those devices' built-in codec implementations, rather than any encoder or decoder for which Snap could allegedly have knowledge. Any backend transcoding is carried out by or through third-party providers, including those using their own proprietary systems and configurations, for which Snap could not have sufficient knowledge of the specific acts alleged to constitute direct infringement. Furthermore, Snap has not taken any "active steps to encourage direct infringement" by any third party, and the Complaint alleges none.

122. In addition, all claims of the '996 Patent are unenforceable against Snap's non-physical HEVC content distribution including Internet streaming because ETRI, Kyung Hee University, and Kwangwoon University's authorized licensing agent irrevocably waived the right to seek royalty fees for non-physical HEVC content distribution including Internet streaming, and because ETRI, Kyung Hee University, and Kwangwoon University ratified that waiver through over eight years of acquiescence and acceptance of benefits.

123. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the alleged infringement of the '996 Patent.

124. Snap seeks a judicial declaration that its Accused Services do not infringe any valid and/or enforceable claim of the '996 Patent.

**COUNT X: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 10,742,996 (Against ETRI, Kyung Hee University, and Kwangwoon University)**

125. Snap restates, re-alleges, and incorporates by reference each and every allegation

set forth in the paragraphs above as though fully set forth herein.

126. Snap seeks a declaratory judgment that the claims of the ’996 Patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and 112.

127. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the invalidity of the ’996 Patent.

128. The claims of the ’996 Patent are invalid at least because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101, including abstract ideas implemented on generic computer components without an inventive concept. In particular, the claims of the ’996 Patent are invalid under 35 U.S.C. § 101 because they are directed to the abstract idea of ordering tasks so that information needed for a later task is available first, and do not recite any inventive concept sufficient to transform that abstraction into patent-eligible subject matter, as the additional claim limitations merely implement that abstract decision rule within a conventional video decoder architecture using standard processing hardware.

129. The claims of the ’996 Patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 because they are anticipated by and/or obvious in view of prior art references that predate the alleged invention(s). In particular, for example and without limitation, the claims of the ’996 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more prior art references, alone or in combination, including U.S. Patent No. 8,194,749, “Method and Apparatus for Image Intraprediction Encoding/Decoding,” Kim et al., issued February 22, 2012, U.S. Patent Application Publication No. 2006/0002466, “Prediction Encoder/Decoder and Prediction Encoding/Decoding Method,” Park, published January 5, 2006, U.S. Patent Application

Publication No. 2008/0240585, "Image Processing Method, Encoder, and Decoder," Imajo, published October 2, 2008, and Zhu et al., "The Intra Prediction Based on Sub-Block," Tsinghua University, Proceedings of the 7th International Conference on Signal Processing, September 4, 2004.

130. The claims of the '996 Patent are invalid at least under 35 U.S.C. § 112 because they fail to satisfy the requirements of written description, enablement, and definiteness. In particular, for example and without limitation, the claims of the '996 Patent are invalid under 35 U.S.C. § 112 as indefinite because the scope of the phrase "determining a decoding order among the plurality of the sub-blocks . . . based on the intra prediction mode" cannot be determined with reasonable certainty by a person of ordinary skill. The claims are also invalid for lacking written description for failing to disclose or support the claimed "determining a decoding order . . . based on the intra prediction mode" for any intra prediction mode, because the specification describes a mode-dependent order only for the diagonal down-left direction.

131. Snap has been and continues to be threatened with enforcement of the '996 Patent, and ETRI, Kyung Hee University, and Kwangwoon University's allegations will continue to harm Snap unless the Court declares the '996 Patent invalid.

132. Snap seeks a judicial declaration that all asserted claims of the '996 Patent are invalid and unenforceable.

**COUNT XI: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 10,003,820 (Against ETRI)**

133. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

134. Through the Complaint, ETRI alleges that Snap infringes the '820 Patent.

135. Snap denies infringement, including any allegation of willful infringement, of

any valid, enforceable, properly construed claim of the ’820 Patent and alleges that Snap has not, and does not, infringe (either literally or under the doctrine of equivalents), directly or indirectly, any valid, enforceable, properly construed claim of the ’820 Patent.

136. Snap’s Accused Services do not practice any claim of the ’820 Patent. Snap does not make, use, sell, offer to sell, or import any product or service that falls within the scope of any claim of the ’820 Patent, either literally or under the doctrine of equivalents. In particular, for example and without limitation, Snap’s Accused Services fail to satisfy at least the limitations of “a prediction value of a leftmost and uppermost filtered prediction pixel among the filtered prediction pixels is generated using a 3-tap filter based on a value derived by the DC mode” and “the filter has a predetermined fixed filter shape, a filter tap and filter coefficients regardless of a size of the current block.”

137. Snap also does not infringe, and has not infringed, because and to the extent that the accused activity is initiated by and carried out for the benefit of end users operating consumer devices licensed under Access Advance’s HEVC Advance patent pool, where the videos at issue were encoded into the HEVC format on devices authorized under the Asserted Patents, and any subsequent actions occur in response to and at the direction of those licensed users.

138. Snap also does not, and has not, indirectly infringed due to the absence of the requisite specific intent to induce infringement. The initial encoding and final decoding of video are carried out on consumer devices using those devices’ built-in codec implementations, rather than any encoder or decoder for which Snap could allegedly have knowledge. Any backend transcoding is carried out by or through third-party providers, including those using their own proprietary systems and configurations, for which Snap could not have sufficient knowledge of the specific acts alleged to constitute direct infringement. Furthermore, Snap has not taken any

"active steps to encourage direct infringement" by any third party, and the Complaint alleges none.

139. In addition, all claims of the '820 Patent are unenforceable against Snap's non-physical HEVC content distribution including Internet streaming because ETRI's authorized licensing agent irrevocably waived the right to seek royalty fees for non-physical HEVC content distribution including Internet streaming, and because ETRI ratified that waiver through over eight years of acquiescence and acceptance of benefits.

140. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the alleged infringement of the '820 Patent.

141. Snap seeks a judicial declaration that its Accused Services do not infringe any valid and/or enforceable claim of the '820 Patent.

**COUNT XII: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 10,003,820 (Against ETRI)**

142. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

143. Snap seeks a declaratory judgment that the claims of the '820 Patent are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including but not limited to Sections 101, 102, 103, and 112.

144. As evidenced by the allegations in the Complaint, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the invalidity of the '820 Patent.

145. The claims of the '820 Patent are invalid at least because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101, including abstract ideas implemented on

generic computer components without an inventive concept. In particular, the claims of the ’820 Patent are invalid under 35 U.S.C. § 101 because they are directed to the abstract idea of averaging neighboring values and then smoothing the edges with a fixed weighted average, and do not recite any inventive concept beyond applying that mathematical formula within a conventional video encoder or decoder architecture using standard processing hardware performing conventional operations.

146. The claims of the ’820 Patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 because they are anticipated by and/or obvious in view of prior art references that predate the alleged invention(s). In particular, for example and without limitation, the claims of the ’820 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more prior art references, alone or in combination, including U.S. Patent Application Publication No. 2011/0135000, “Method and Apparatus for Encoding Video, and Method and Apparatus for Decoding Video,” Alshina et al., published June 9, 2011, Sugimoto et al., “CE6.f: LUT-based adaptive filtering on intra prediction samples,” Mitsubishi Electric Corporation and NHK (Japan Broadcasting Corporation), March 23, 2011, JCTVC-E069, Wiegand et al., “WD3: Working Draft 3 of High-Efficiency Video Coding,” March 23, 2011, JCTVC-E603, and Chono et al., “CE6: Cross-verification report of LUT-based intraprediction filtering (JCTVC-E069),” NEC Corporation, March 23, 2011, JCTVC-E184.

147. The claims of the ’820 Patent are invalid at least under 35 U.S.C. § 112 because they fail to satisfy the requirements of written description, enablement, and definiteness. In particular, for example and without limitation, the claims of the ’820 Patent are invalid under 35 U.S.C. § 112 as indefinite because the scope of the phrase “the filter has a predetermined fixed filter shape, a filter tap and filter coefficients regardless of a size of the current block”

cannot be determined with reasonable certainty by a person of ordinary skill. The claims are also invalid for lacking written description for failing to disclose or support the claimed filter "regardless of a size of the current block," because the specification describes determining whether filtering is performed, and the filtering region, based on the size of the current block.

148. Snap has been and continues to be threatened with enforcement of the '820 Patent, and ETRI's allegations will continue to harm Snap unless the Court declares the '820 Patent invalid.

149. Snap seeks a judicial declaration that all asserted claims of the '820 Patent are invalid and unenforceable.

**COUNT XIII: DECLARATORY JUDGMENT OF BREACH OF RAND OBLIGATIONS (Against ETRI, Kyung Hee University, KAU, Kwangwoon University, and Access Advance)**

150. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

151. Plaintiffs and/or their predecessors-in-interest entered into express or implied contractual commitments to the ITU relating to the licensing of patents essential to the HEVC standards on RAND terms. These commitments are valid, enforceable, and binding upon Plaintiffs. These RAND commitments are enforceable obligations that run with the patents. Snap is an intended third-party beneficiary of these RAND commitments. Because Access Advance was authorized to offer and grant licenses under Plaintiffs' RAND-encumbered patents, it was subject to the RAND obligations that ran with and burdened those patents. Moreover, Access Advance exercised its licensing authority on Plaintiffs' behalf and could not, through delegated authority, engage in conduct that would have been inconsistent with Plaintiffs' RAND obligations had any Plaintiff undertaken that conduct directly.

152. Plaintiffs have breached their RAND commitments by failing to offer Snap a

license to their alleged HEVC standard-essential patents on fair, reasonable and nondiscriminatory terms and conditions.

153. Through their licensing agent, Access Advance, Plaintiffs have attempted to coerce Snap into accepting licensing terms that do not comply with Plaintiffs' RAND obligations, including because the royalties demanded exceed a RAND royalty rate for any Asserted Patents that are allegedly essential to implementing the HEVC standard and because the offered license ties such patents to additional patents that cover video coding standards beyond HEVC, including AV1, VVC, and VP9, while not covering AVC. Further, Plaintiffs have not made any licensing offer to Snap for the Asserted Patents apart from Access Advance's non-RAND licensing demand.

154. At all relevant times, Access Advance acted as Plaintiffs' licensing agent and sub-licensor with respect to patents allegedly essential to the HEVC standard, including by implementing Plaintiffs' licensing programs, communicating licensing positions to implementers, issuing licensing demands, and seeking royalties on Plaintiffs' behalf.

155. Access Advance directly participated in and facilitated Plaintiffs' breach of their RAND commitments by transmitting licensing demands, proposing licensing terms, and implementing licensing programs that demand supra-RAND royalties, attempt to impose unfair and unreasonable terms and conditions, and discriminate against Snap, including through the VDP Pool.

156. On information and belief, Access Advance derives revenues from administering the VDP pool licensing program and relies on the enforceability of the Asserted Patents to carry out that licensing program. Therefore, Access Advance has a direct, concrete financial interest in the enforceability of the Asserted Patents.

157. Declaratory relief concerning Plaintiffs' RAND obligations must run against both Plaintiffs and Access Advance to prevent Plaintiffs from enforcing or circumventing their RAND commitments through their licensing agent. Access Advance implemented, enforced, and sought to benefit from Plaintiffs' RAND-encumbered licensing obligations as Plaintiffs' authorized licensing agent, and declaratory relief must therefore run against Access Advance to prevent circumvention of this Court's judgment.

158. Snap is entitled to a judicial determination and declaration that Plaintiffs, directly and through their licensing agent Access Advance, have not offered Snap a license to Plaintiffs' alleged HEVC standard-essential patents on RAND terms and conditions, and that Plaintiffs, directly and through their licensing agent Access Advance, have breached their RAND commitments to the ITU.

159. Snap seeks a judgment jointly against Plaintiffs and Access Advance declaring that all claims of the Asserted Patents are unenforceable based upon Plaintiffs' breach, directly and through their licensing agent Access Advance, of their RAND commitments.

160. As a direct and proximate result of Plaintiffs' breaches of their RAND commitments, including the conduct undertaken by and through Access Advance as Plaintiffs' licensing agent, Snap has suffered and continues to suffer injury. Among other harms, Snap has been required to expend substantial resources responding to and defending against non-RAND licensing demands, investigating and evaluating the licensing positions advanced by Access Advance, participating in licensing negotiations conducted on non-RAND terms, and defending against litigation that was initiated without first providing Snap a RAND license offer. Unless declaratory and other relief is granted, Snap will continue to suffer ongoing injury from Plaintiffs' and Access Advance's efforts to coerce acceptance of licensing terms that do not

comply with Plaintiffs' RAND obligations.

**COUNT XIV: BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**
**(Against ETRI, Kyung Hee University, KAU, Kwangwoon University, and Access Advance)**

161. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

162. Through their statements, conduct, and relationship with the ITU, Plaintiffs have express or implied contractual commitments to abide by the ITU's Patent Policy and Guidelines, and to offer licenses on RAND terms to any patents essential to implement the HEVC standard. These RAND commitments are enforceable obligations that run with the patents.

163. Every party producing products or delivering services that support the HEVC standard, including Snap, is an intended third-party beneficiary of Plaintiffs' contractual commitments to the ITU.

164. At all relevant times, Access Advance acted as Plaintiffs' authorized licensing agent in connection with negotiations, licensing demands, and enforcement conduct relating to patents allegedly essential to the HEVC standard, including communications with Snap regarding licensing terms and enforcement risk. Because Access Advance was authorized to offer and grant licenses under Plaintiffs' RAND-encumbered patents, it was subject to the RAND obligations that ran with and burdened those patents. Moreover, Access Advance exercised its licensing authority on Plaintiffs' behalf and could not, through delegated authority, engage in conduct that would have been inconsistent with Plaintiffs' RAND obligations had any Plaintiff undertaken that conduct directly.

165. Access Advance participated directly in Plaintiffs' failure to negotiate in good faith by advancing licensing demands, proposing non-RAND terms, and facilitating enforcement actions without first offering Snap a license on RAND terms consistent with

Plaintiffs' obligations.

166. Because Access Advance controlled and executed material aspects of the licensing process on Plaintiffs' behalf, declaratory relief concerning the breach of the duty of good faith and fair dealing must apply jointly to Plaintiffs and Access Advance.

167. The duty of good faith and fair dealing required that Plaintiffs and Access Advance conduct licensing discussions in a manner reasonably directed toward reaching a RAND license. That duty included refraining from tactics designed to short-circuit negotiations, withholding information necessary to evaluate licensing terms, or using the threat of litigation to obtain leverage unrelated to the merits of the licensing positions.

168. Plaintiffs, directly and through their licensing agent Access Advance, breached their obligation to negotiate in good faith and with fair dealing by, instead of offering Snap a license on RAND terms before filing this litigation, using threats of litigation while licensing discussions remained ongoing, failing to reasonably participate in the exchange of information necessary to evaluate licensing terms, frustrating the licensing discussions, and pursuing injunctive relief and substantial damages as litigation pressure to coerce acceptance of proposed licensing terms rather than engaging in good-faith licensing negotiations as part of a meaningful negotiation process consistent with their RAND obligations.

169. As a result of Plaintiffs' breach, directly and through their licensing agent Access Advance, of their duty to negotiate in good faith and fair dealing, Snap has been injured in its business and property. Plaintiffs' refusal, directly and through their licensing agent Access Advance, to offer a license to Snap on RAND terms before filing this action has caused Snap to incur unnecessary costs and unwarranted harm in defending this litigation.

170. Snap is entitled to a declaratory judgment that Plaintiffs and Access Advance

have not complied with their obligations to negotiate in good faith and fair dealing toward a RAND license.

171. As a direct and proximate result of Plaintiffs' and Access Advance's failure to negotiate in good faith toward a RAND license, Snap has incurred substantial and unnecessary costs, including attorneys' fees, expert-consulting expenses, internal business costs, and other expenditures associated with responding to licensing demands and defending this action. Had Plaintiffs and Access Advance complied with their obligations to negotiate in good faith and on RAND terms before initiating litigation, some or all of these costs could have been avoided.

**COUNT XV: DECLARATORY JUDGMENT OF UNENFORCEABILITY DUE TO EXPRESS WAIVER**
**(Against ETRI, Kyung Hee University, KAU, Kwangwoon University, and Access Advance)**

172. Snap restates, re-alleges, and incorporates by reference each and every allegation set forth in the paragraphs above as though fully set forth herein.

173. As evidenced by the allegations above, there is now an actual, substantial, and continuing justiciable controversy between Plaintiffs and Snap with respect to the enforceability of the patent claims licensed through Access Advance.

174. All claims of all Asserted Patents that are licensed through Access Advance are unenforceable against Snap's non-physical HEVC content distribution including Internet streaming because (1) Access Advance, as Plaintiffs' authorized licensing agent, irrevocably waived the right to seek royalty fees for non-physical HEVC content distribution including Internet streaming, and (2) Plaintiffs ratified that waiver through years of acquiescence by remaining in the pool, not disavowing the waiver, continuing to authorize Access Advance to act as their licensing agent, and acceptance of benefits of the increased licensing revenues resulting from the waiver. At a minimum, Plaintiffs are bound by Access Advance's waiver as

Access Advance was and is, at all relevant times, Plaintiffs' licensing agent.

175. On information and belief, Access Advance derives revenues from administering the VDP pool licensing program and relies on the enforceability of the Asserted Patents to carry out that licensing program. Therefore, Access Advance has a direct, concrete financial interest in the enforceability of the Asserted Patents.

176. Snap is entitled to a declaratory judgment that all claims of all Asserted Patents that are licensed through Access Advance are unenforceable against Snap's non-physical HEVC content distribution including Internet streaming due to express waiver.

## EXCEPTIONAL CASE

177. On information and belief, this is an exceptional case entitling Snap to an award of its attorneys' fees incurred in connection with defending this action pursuant to 35 U.S.C. § 285, as a result of, inter alia, Plaintiffs' assertion of the Asserted Patents against Snap with the knowledge that Snap does not infringe any valid or enforceable claim of the Asserted Patents and/or that the Asserted Patents are invalid and/or unenforceable.

## PRAYER FOR RELIEF

Snap hereby requests that the Court deny Plaintiffs all relief they seek, and award Snap the following relief:

A. Entry of judgment in Snap's favor and against Plaintiffs on each and every cause of action in the Complaint;

B. Entry of judgment that the Asserted Patents, and each and every asserted claim thereof, are not infringed by Snap, either directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise;

C. Entry of judgment that the Asserted Patents, and each and every asserted claim thereof, are invalid and/or unenforceable;

D. Entry of judgment declaring that Plaintiffs, directly and through their licensing agent Access Advance, have breached their RAND commitments to the ITU and have not offered Snap a license on fair, reasonable, and nondiscriminatory terms;

E. Entry of judgment that Plaintiffs, directly and through their licensing agent Access Advance, have breached their duty of good faith and fair dealing to negotiate a RAND license with Snap prior to filing this lawsuit;

F. Entry of judgment declaring that the Asserted Patents are RAND-encumbered and that Plaintiffs, directly and through their licensing agent Access Advance, are obligated to offer Snap a license on RAND terms;

G. Entry of judgment declaring that Plaintiffs, directly and through their licensing agent Access Advance, waived any ability to enforce the Asserted Patents against Snap;

H. Entry of judgment that Plaintiffs' patent rights in the Asserted Patents have been exhausted and/or that Snap's Accused Services are licensed under Plaintiffs' and/or Access Advance's agreements with third parties;

I. Entry of an order that Snap is the "prevailing party" and that this case is "exceptional" within the meaning of 35 U.S.C. § 285, and an award granting Snap its reasonable attorneys' fees and costs, as permitted by law or equity;

J. An award of prejudgment interest to Snap at the legal rate through the date of judgment; and

K. For any and all other legal and equitable relief, including injunctive relief and restitution, as may be available under law and that the Court may deem proper.

## DEMAND FOR JURY TRIAL

Snap demands a trial by jury on all issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*
Karen Jacobs (#2881)
Jennifer Ying (#5550)
Olivia A. Giannetta (#7954)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
jying@morrisnichols.com
ogiannetta@morrisnichols.com

*Attorneys for Defendant and Counterclaim-Plaintiff Snap Inc.*

OF COUNSEL:

Kathi Vidal
Alexander P. Ott
Joseph C. Masullo
WINSTON TAYLOR LLP
1901 L Street NW
Washington, DC 20036
(202) 282-5000

Eimeric Reig-Plessis
WINSTON TAYLOR LLP
101 California Street, 21st Floor
San Francisco, CA 94111-5891
(415) 591-1000

Carson Swope
WINSTON TAYLOR LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
(650) 858-6500

November 9, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 9, 2026, upon the following in the manner indicated:

Brian E. Farnan, Esquire
Michael J. Farnan, Esquire
FARNAN LAW, LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Plaintiffs and Counterclaim-Defendants Electronics and Telecommunications Research Institute, University – Industry Cooperation Group of Kyung Hee University, and Access Advance LLC*

*VIA ELECTRONIC MAIL*

Kevin Schubert, Esquire
Emily Tannenbaum, Esquire
MCKOOL SMITH P.C.
1301 6th Ave, 32nd Floor
New York, NY 10019
*Attorneys for Plaintiffs and Counterclaim-Defendants Electronics and Telecommunications Research Institute, University – Industry Cooperation Group of Kyung Hee University*

*VIA ELECTRONIC MAIL*

Eric S. Hansen, Esquire
MCKOOL SMITH P.C.
300 Crescent Court
Dallas, TX 75201
*Attorney for Plaintiffs and Counterclaim-Defendants Electronics and Telecommunications Research Institute, University – Industry Cooperation Group of Kyung Hee University*

*VIA ELECTRONIC MAIL*

Mitch Verboncoeur, Esquire *VIA ELECTRONIC MAIL*
MCKOOL SMITH P.C.
303 Colorado Street, Suite 2100
Austin, TX 78701
*Attorney for Plaintiffs and Counterclaim-Defendants Electronics and Telecommunications Research Institute, University – Industry Cooperation Group of Kyung Hee University*

Christopher McNett, Esquire *VIA ELECTRONIC MAIL*
Kyra Mouser, Esquire
Christian Dorman, Esquire
MCKOOL SMITH P.C.
1717 K Street, NW, Suite 1000
Washington, DC 20006
*Attorneys for Plaintiffs and Counterclaim-Defendants Electronics and Telecommunications Research Institute, University – Industry Cooperation Group of Kyung Hee University*

/s/ Jennifer Ying
Jennifer Ying (#5550)